**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BULLSEYE TELECOM, INC,

    Plaintiff/Counter-Defendant,

v.                                                        Case No. 10-13123

CRICKET COMMUNICATIONS, INC.,

    Defendant/Counter-Plaintiff.

                                                       /

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

On February 28, 2011, Plaintiff/Counter-Defendant BullsEye Telecom, Inc., filed the pending motion for summary judgment against Defendant/Counter-Plaintiff Cricket Communications, Inc. Cricket responded on March 21, 2011, and BullsEye replied on April 4, 2011. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will deny BullsEye's motion.

**I. BACKGROUND**

Both Plaintiff and Counter-Plaintiff allege breach of contract and unjust enrichment stemming from the termination of a business relationship for the provision of communications services at various locations. In November 2005, BullsEye and Cricket executed a contract entitled "Corporate Advantage Sales Agreement" ("Agreement"). (Pl. Mot. Ex. A.) Incorporated by reference were additional terms and conditions. By its terms, the Agreement covered two distinct periods. The first term ran for a term of three years following execution of the contract, from November 1, 2005 through October 31,

2008 ("Initial Term").[1]  The optional second term covered the period from November 1, 2008, through October 31, 2009 ("Extended Term").  The Extended Term was to commence unless Cricket notified BullsEye of its intent not to extend.  The terms and conditions referenced in the Agreement specified the acceptable means of terminating the Agreement prior to the Extended Term:

> After the Initial Term and any successor Term (Term), this Agreement will renew automatically for an additional twelve (12) month period unless either party provides written or telephonic notice (by contacting BullsEye Customer Service subject to recorded Third Party Verification in the case of notice from Customer) of cancellation at least thirty (30) days (but not prior to ninety (90) days) before the new Term Commences.  All written termination notices under BullsEye's Customer Satisfaction Guarantee, or for non-renewal of a term plan, must be sent to or faxed via facsimile to 248-784-2501: "BullsEye Telecom, Inc., Attention Contract Administration, 25900 Greenfield Road, Oak Park, Michigan 48237".  If Customer provides a notice of cancellation and continues to use a Service beyond the expiration date of the Term, the rates and charges applicable to Customer will be automatically converted to a month-to-month pricing plan.

(Pl. Mot. Ex. A, at 6 § 7.)  The Agreement thus provided for automatic extension at the conclusion of the Initial Term, which could be avoided only by providing written or telephonic notice between August 3, 2008, and October 2, 2008 ("Termination Window").

The Agreement further provided for termination at the option of Cricket if BullsEye breached the terms of the Service Level Agreements ("SLA").  The SLA specified the precise details of services to be provided and the period for BullsEye to cure each type of service deficiency.  Under the Agreement, a failure by BullsEye to

---

[1]  As the parties agree that the contract was executed on November 1, 2005, the court will take this fact to be admitted by the parties.  The copy of the contract provided to the court, however, indicates that BullsEye's agent did not sign the document until November 9, 2005.

2

correct a service deficiency after notice and the cure period listed in the SLA would permit Cricket to transfer lines to a competing service provider or, if affecting at least ten percent of the lines, to terminate the Agreement without paying a termination fee:

> If Customer notifies BullsEye Telecom in writing or by suitable electronic communication that BullsEye has failed to meet any of the commitments in the SLA (specifying in detail the commitment not met), and, after notice and the applicable cure period BullsEye has not remedied the problem in the time specified in the SLA, Customer has the option to move the lines at the Location affected by the breach to another provider with no termination fee. The Customer must send BullsEye written notification that they intend to move the lines to another provider.  Notwithstanding the foregoing, or the provisions of Section 7 or 8 of the Terms and Conditions attached hereto, if Customer notifies BullsEye Telecom in writing or by suitable electronic communication that BullsEye has cumulatively failed to meet it [sic] commitments regarding ten percent (10%) or more of the activated lines with BullsEye (as measure [sic] at the time of such notice) (specifying in detail the commitment not met), then Customer has the option to terminate this Agreement without liability for any termination fee or costs.

(Pl. Mot. Ex. A, at 2 § 6(A).)  It is important to note that this section does not expressly require notice of transfer or termination be given by the same means as used to avoid the Extension Period.

Finally, the Agreement requires Cricket to maintain its purchase of services at eighty percent of its initial level of newly activated lines.  (Pl. Mot. Ex. A, at 2 § 8.)  A shortfall fee would apply for each line below that level each month, which would apply to both the Initial Term and the Extended Term.  (*Id.*)  The application of these three sections of the Agreement comprises the basis of both the claims and the counterclaims.

At some point following execution of the Agreement, Cricket claims to have begun experiencing problems with the service provided by BullsEye.  On December 7, 2007, Cricket provided written notice to BullsEye that it viewed the SLA provisions

relating to billing and reports as having been breached by BullsEye.  (Def. Resp. Ex. 2.)  Despite the indication that "Cricket *may* exercise its termination rights" if the SLA deficiencies were not cured, Cricket continued to utilize BullsEye services.  (Def. Resp. Ex. 2 (emphasis added).)  Through a series of telephone conversations, electronic mail correspondence, and direct meetings, Cricket claims it notified BullsEye of its intent not to renew the Agreement for the Extended Term.  (Def. Resp. Ex. 4.)  In addition to communication at a meeting between Clint Sharp of Cricket and Cheryl O'Connell of BullsEye in July 2008, Cricket claims that Sharp telephoned BullsEye in September 2008 to terminate the Agreement at the conclusion of the Initial Term.  (Def. Resp. Ex. 4, ¶ 15.)  The reason given by Cricket for opting out of the Extended Term include breaches of the SLA relating to response time, invoices, and reports.  (Def. Resp. Ex. 5.)  BullsEye denies breaching any SLA provision, receiving notice of any breach, or receiving proper notice of termination within the Termination Window.  To rebut the declaration of Sharp and an e-mail exchange listing "action items" from the July 2008 meeting, BullsEye presents the deposition of O'Connell and the affidavit of Thomas Tisko.  (Pl. Reply Exs. 1 & 2.)

     Irrespective of the Agreement provisions, Cricket began transferring lines from BullsEye to Granite Telecommunications, Inc., at the end of 2008.  Cricket retained some lines with BullsEye and continued to receive regular invoices, which included shortfall assessments pursuant to the Agreement.  In April 2009, Cricket claims to have first become aware that BullsEye was assessing shortfall charges based upon its contention that the Agreement remained in force throughout the Extended Term.  (Def. Resp. Ex. 8.)  On September 8, 2009, Cricket sent written notice of termination at the

4

end of the Extended Term, while reiterating that it disputed the renewal at the conclusion of the Initial Term.

On July 15, 2010, BullsEye brought suit against Cricket for breach of contract and unjust enrichment in Oakland County Circuit Court.  Cricket timely removed on August 6, 2010.  On August 13, 2010, Cricket filed its answer and counterclaims for breach of contract and unjust enrichment.  BullsEye maintains that Cricket has failed to pay several invoices including charges for services received and shortfall charges.  Cricket claims it inadvertently paid shortfall charges assessed during the Extended Term, despite its notice of termination.  On February 28, 2011, BullsEye moved for summary judgment on its complaint and on Cricket's counterclaims.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict — 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III.  DISCUSSION

Because jurisdiction in this case is based solely upon diversity of citizenship, the court must apply the law of the State of Michigan.  *Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938); *Stalbosky v. Beleu*, 205 F.3d 890 (6th Cir. 2000).  Under Michigan law, an action for breach of contract comprises four elements: 1) existence of a contract, 2) the terms of the contract, 3) breach of the terms, and 4) damages resulting from the breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).  It is undisputed that a contract existed between the parties.  Although most of the terms are unambiguous, there is some dispute regarding the appropriate means of telephonic notice of termination.  The greatest issue between the parties, however, remains whether the terms were breached by either party.  BullsEye claims that Cricket breached by failing to pay charges due under the terms during the operation of the contract's Extended Term.  Cricket claims BullsEye breached the SLA and that the contract terminated prior to the Extended Term.  The occurrence of a breach of a contract term is typically a question of fact under Michigan law.  *Alticor, Inc. v. National Union Fire Ins. Co. of Pennsylvania*, 345 F. App'x 995, 998 (6th Cir. 2009) (citations omitted).

Although other issues remain, all claims and counterclaims revolve around two questions: 1) whether the Agreement was properly terminated prior to the Extended Term, and 2) whether BullsEye breached the SLA.  BullsEye argues that the evidence reasonably supports only one possible finding for each question, leaving only issues of law.  Cricket challenges this assertion.  Because the court finds that genuine disputes of material fact remain as to whether the Agreement renewed at the conclusion of the

7

Initial Term and whether BullsEye breached the SLA, the instant motion must be denied.

### A. Termination Prior to the Extended Term

By its terms, the Agreement automatically renewed for the Extended Term, "unless either party provide[d] written or telephonic notice (by contacting BullsEye Customer Service subject to recorded Third Party Verification in the case of notice from Customer) of cancellation" during the Termination Window. Written notice is further defined as written notice sent or faxed to a particular facsimile number or address. No evidence is presented that Cricket provided proper written notice. Cricket does, however, present some evidence that Sharp contacted BullsEye via telephone. The sworn declaration of Clint Sharp—whom Cricket lists as a witness in its final witness list—indicates, albeit weakly, that Sharp contacted O'Connell or Franks in September 2008 to provide notice of termination. (Def. Resp. Ex. 4, ¶ 15.) Sharp's statement is supported by an e-mail message of September 18, 2008, collecting reasons for terminating the Agreement. (Def. Resp. Ex. 5.) Based upon this and the other evidence of meetings and potential service issues, a reasonable finder of fact could determine that Sharp provided telephonic notice of termination within the Termination Window to O'Connell, Franks, or both.

This, in turn, raises a question of the definition of the term "telephonic notice" within the Agreement. The parenthetical following "telephonic notice" appears to indicate a limitation on the acceptable means of providing such notice, requiring that Cricket provide telephonic notice by "contacting BullsEye Customer Service." As Cricket notes in its response, the term "BullsEye Customer Service" is undefined in the

Agreement.  Therefore, there is an ambiguity on the face of the contract, which must be resolved as a factual matter.  Under settled Michigan law, interpretation of an ambiguous term or provision is a question of fact.  *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453-54 (Mich. 2003).  The provision requiring that telephonic termination be made "by contacting BullsEye Customer Service," therefore, presents a material question of fact.  Should it be read to include O'Connell and Franks, then a reasonable finder of fact could conclude that Cricket properly terminated the Agreement prior to the commencement of the Extended Period.  Should it instead by read to exclude O'Connell and Franks, Cricket has presented no evidence indicating it otherwise terminated the Agreement according to this provision.  Cricket cannot rely upon other means of notice not contemplated by the Agreement.

There remains a genuine dispute regarding the material facts concerning notice of termination at the end of the Initial Term.  Therefore, summary judgment is inappropriate on BullsEye's claims.

### B.  Breach of the SLA

Although Cricket bears the ultimate burden of proving by a preponderance of the evidence that BullsEye breached the SLA and that Cricket's subsequent actions were in accordance with the terms of the Agreement, BullsEye bears the burden of proving that no genuine issue of material fact exists for the purpose of its summary judgment motion.  The evidence presented by the parties indicates that there remain genuine disputes regarding facts essential to the determination of whether BullsEye breached the SLA terms and whether Cricket terminated the Agreement on the basis of such breach.

Both parties agree that the evidence shows that Cricket indicated that it believed BullsEye had breached provisions of the SLA relating to billing and reports, as evinced in Cricket's December 5, 2007, letter. (Def. Resp. Ex. 2.) Although that letter did not itself terminate the Agreement, it provided the requisite notice required under the Agreement. Despite BullsEye's assertion that the O'Connell deposition shows the inaccuracy of Cricket's assertion of breach, the evidence presented by Cricket suffices to establish a triable issue of fact as to whether a breach occurred. (See Def. Resp. Exs. 2-5.) Even O'Connell's deposition only indicates that "there were some reports available that [Cricket] could go online and pull and then the more detailed ones they needed their account manager to pull." (Pl. Reply Ex. 1, at 76.) Resolving the question at this stage would require the court to weigh the evidence and make determinations of credibility, which are improper on a motion for summary judgment. Viewing the evidence in a light most favorable to the respondent, the court cannot say that no breach occurred. Should a breach be established, the 2007 letter would also constitute notice of the breach under the Agreement.

Even assuming a breach of the SLA terms and notice of the breach, the Agreement requires "written notification that [Cricket] intend[s] to move the lines to another provider." (Pl. Mot. Ex. A, at 2 § 6(A).) In the event of a general breach of the SLA, Cricket had "the option to terminate this Agreement without liability for any termination fee or costs." Although no required mode of termination is expressly stated, the 2007 letter does not purport to actually terminate the Agreement. Whether later communications terminated the Agreement remains a disputed matter, as does the question of whether BullsEye cured any breach. Cricket presents Sharp's declaration, a

trouble ticket report, and e-mail in support of its allegation that the breach was not cured prior to termination. (Def. Mot. Ex. 4, ¶ 6; Def. Mot. Ex. 3; Def. Mot. Exs. 5-6.) BullsEye presents the Affidavit of Tisko and a letter dated January 11, 2008, that details certain steps taken to address Cricket's complaints of SLA deficiencies. (Pl. Mot. Ex. D, ¶ 6; Pl. Mot. Ex. H.) As the evidence presents a genuine issue of material fact regarding breach, cure, and termination, the court will deny BullsEye's motion for summary judgment on Cricket's counterclaims.

With particular reference to Cricket's alternative counterclaim for unjust enrichment, recovery can be obtained thereunder only if the Agreement is found not to govern the payments at issue and all other required elements are proven at trial. *See Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009); *Johnson v. Michigan Mutual Ins. Co.*, 454 N.W.2d 128, 130 (Mich. Ct. App. 1989). The court will deny summary judgment at this time because it is not apparent from the record that the Agreement governs all possible overpayments made by Cricket should the Agreement be found to have terminated prior to the commencement of the Extended Term.

## IV.  CONCLUSION

Cricket has presented sufficient evidence for a reasonable jury to find that BullsEye breached the Agreement or that Cricket terminated the Agreement within the Termination Window by suitable means. Viewed in the light most favorable to the respondent, therefore, the record fails to show that there is no genuine dispute regarding material facts and that the movant is entitled to judgment as a matter of law. Accordingly,

IT IS ORDERED that Plaintiff/Counter-Defendant's motion for summary judgment [Dkt. # 17] is DENIED.

       s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: May 4, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 4, 2011, by electronic and/or ordinary mail.

       s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-13123.BULLSEYE.Deny.SJ.nkt.wpd